Elmer K. Zitzewitz and Gertrude Zitzewitz v. Commissioner. Elmer K. Zitzewitz and Peggy A. Zitzewitz v. Commissioner.
Zitzewitz v. Commissioner
Docket Nos. 3543-66, 3544-66.
United States Tax Court
T.C. Memo 1969-17; 1969 Tax Ct. Memo LEXIS 277; 28 T.C.M. (CCH) 70; T.C.M. (RIA) 69017; January 29, 1969, Filed Joseph M. Solon, *278 208 S. LaSalle St., Chicago, Ill. and Martin Cohn, 35 E. Wacker Dr., Chicago, Ill., for the petitioners. Nelson E. Shafer, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Addition to
Docket
Tax,§ 6653(a),
Number
Year
Deficiency
I.R.C. 1954 [1]
3543-66
1962
$10,771.55
$538.58
3544-66
1963
12,593.02
629.65
The issues in these consolidated cases are (1) whether petitioners are entitled to deductions for claimed business ecpenses in amounts greater than those already allowed for the taxable years 1962 and 1963, and (2) whether petitioners are liable for the negligence penalty under section 6653(a) for the years 1962 and 1963. Findings of Fact Some of the facts were stipulated and they are herein included by this reference. Petitioners were residents of Illinois at the time the petitions in these proceedings were filed. Elmer K. Zitzewitz (hereinafter referred to as petitioner) and his then wife, Gertrude *279 Zitzewitz, filed a joint income tax return for 1962 with the district director of internal revenue at Chicago, Ill. Petitioner and his wife, Peggy A. Zitzewitz, filed a joint income tax return for 1963 with the district director of internal revenue at Chicago, Ill.
During the years in question petitioner owned and operated a sole proprietorship called Zitzewitz Engineering Associates. The business was largely that of designing and selling custom made machines and parts. The business income was from commissions or sales income as a manufacturer's representative or from buying and selling products. He employed approximately five salesmen who were engineers and an office secretary, Ruth Idleman. Some of the products he handled were manufactured in Europe. Petitioner had an office in New York as well as in Chicago. The sales engineers employed by the petitioner were provided with the petitioner's charge cards issued by American Express Co., Carte Blanche and Diner's Club, and they were permitted to use the charge cards and charge to the petitioner's account expenses incurred in entertainment and travel. The office secretary kept the office book-keeping and appointment records for *280 petitioner. Petitioner also kept pocket diaries in addition to the main records. Petitioner's Federal income tax return for 1962 discloses a deduction for "Advertising and General Selling Expense" in the amount of $28,033.88, which respondent disallowed in part in the amount of $13,871.05. Petitioner's Federal income tax return for 1963 discloses a deduction for "Advertising and General Selling Expense" in the amount of $23,883.67, which respondent disallowed in part in the amount of $18,914.87, and "Traveling and Salesmen's Expenses" in the amount of $5,844.02, which respondent disallowed in part in the amount of $2,796.14. Petitioner's returns showed gross profits from sales (gross receipts from sales minus cost of goods sold) in the years 1962 and 1963 in the amounts of $197,402.79 and $218,264.35, respectively. 71 Petitioner was divorced from Gertrude and married to Peggy in April 1963. That same month petitioner and Peggy made a trip to Europe for which petitioner deducted $3,197.10 as a business expense. Counting the days of departure and return, petitioner and his wife were in a travel status for 48 days. Of those days, 5 days in England and 5 days in Paris were *281 personal in nature. During the years in question petitioner made periodic withdrawals of money from his business, generally in the amount of $250. In 1962 he deducted $8,000 from the total amount withdrawn that year as business expenses and in 1963 he similarly deducted $5,763.50 from the total amount withdrawn. Opinion On his 1962 income tax return petitioner deducted $28,033.88 as "Advertising and General Selling Expense" and respondent disallowed $13,871.05 of that amount. On his 1963 income tax return petitioner deducted $23,883.67 as "Advertising and General Selling Expense" and respondent disallowed $18,914.87 of that amount. Petitioner also deducted $5,844.02 as "Traveling and Salesmen's Expenses" in 1963 and respondent disallowed $2,796.14 of that amount. The question is whether petitioner is entitled to any deduction in excess of that which has already been allowed for the years in question. Section 162, I. R. C. of 1954, provides, in general, for a deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." The stipulation of facts lists the items that make up the 1962 total of $28,033.88 *282 claimed to be deductible by petitioner. For the most part they represent payments to credit card companies, clubs, hotels, and stores and $8,000 in cash withdrawals by petitioner. The stipulation shows respondent allowed some of the items on the list in the total sum of $8,162.83 and then made an estimated additional Cohan- type allowance of $6,000 more, or a total allowance of $14,162.83. It is admitted the listed items were all paid. This means it was petitioner's burden to substantiate more than $6,000 of the disallowed listed items as business deductions. Petitioner testified that his office secretary kept records and a main diary which would be sufficient to prove that his expenditures were proper business expenses. He testified that he was unable to find these records; that he thought his secretary destroyed them when she left his employ at the end of 1967. His testimony with respect to these records and his secretary is somewhat confusing. He stated that he thought his secretary was residing in Chicago; that somebody contacted her; that he wanted her to testify, but that she refused. When asked if he issued a subpoena for her he replied: "No. What good? She isn't going to *283 help me any if she doesn't want to testify." Petitioner thought that he or his secretary had the records up until 1967 or 1968, but he stated that when they searched for them they could not be found. He testified that he asked his secretary to dig the records out but he could not remember when he asked her to "dig them out." Based on this kind of confusing testimony we cannot find that the records in fact exist, existed, or for that matter, were adequate to prove the necessary relationship between the expenses and petitioner's business. For the taxable year 1962, petitioner evidently feels that he can sustain his burden of proof by introducing into evidence cancelled checks, various receipts and credit card statements and by testifying, generally, that his expenditures were for business purposes. While the cancelled checks, receipts, and statements of account show that the amount deducted was expended, and what hotels, dinner clubs and the like were involved, they do not show us for what purpose it was spent nor, in every instance, when the expenses were actually incurred. For example, the invoices from the Tavern Club simply listed charges for a "period ending" on a specified date. *284 Apart from a few minor items of expense, such as at the Treadway Maryland Inn in the amount of $113.44, petitioner was unable to substantiate the purpose for which he made his expenditures. He testified that some of the expenses he incurred were at various conventions but he did not mention the date, place or particular purpose for which these expenses were incurred. He also sought to substantiate his cash withdrawals of some $8,000 by general testimony that he "had to expend a lot of money in cash", and that he "did a great deal of traveling and both by automobile and then by plane and then by, even some by train." Some of petitioner's testimony would only tend to substantiate items of expense that respondent did not disallow. Very seldom was he able to match any particular expense 72 to any specific date, place or purpose. Other than his own general testimony he presented no records or proof of any substance as to the purpose for his expenditures. This kind of general testimony furnishes no basis for allowing disallowed items as "ordinary and necessary" business expenses. Respondent, pursuant to the decision in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), *285 allowed $6,000 as an estimated additional allowance for the taxable year 1962. This estimated allowance more than covers those few items of expense petitioner's evidence might indicate could have been allowed. Because petitioner's testimony and evidence for 1962 was so general and of such a summary nature we cannot conclude that he has carried his burden of proof. Reginald G. Hearn, 36 T.C. 672 (1961), aff'd. 309 F. 2d 431 (C.A. 9, 1962), certiorari denied 373 U.S. 909 (1963). The stipulation of facts lists the items that make up the 1963 total of $23,883.67 claimed to be deductible by petitioner. Again, as in 1962, they represent payments to credit card companies, clubs, hotels, and stores and $5,763.50 in cash withdrawals by petitioner. There was also one item of $3,197.10 paid to a travel agency. The stipulation shows respondent allowed some of the items in the total sum of $3,968.80 and then made an estimated additional allowance of $1,000, or a total allowance of $4,968.80. This means it was petitioner's burden to substantiate more than $1,000 of the disallowed listed items as business deductions. For the taxable year 1963, the deductibility *286 of travel and entertainment expenses must also be measured by the additional requirements of section 274. This section provides that taxpayers, in order to claim a travel or entertainment expense deduction under section 162, must substantiate expenditures by adequate records or other corroborating evidence. See section 1.274-5(c), Income Tax Regs. This, in effect, abolishes the Cohan- rule of approximation of allowances. Section 274(d) sets forth the type of information a taxpayer is required to furnish in order to deduct travel and entertainment expenses under section 162. It requires extensive and specific documentation of the amount spent, the time and place of the travel or entertainment, the business purpose of the expense and the business relationship to the taxpayer of the persons entertained. John Robinson, 51 T.C. - (Dec. 31, 1968), William F. Sanford, 50 T.C. 823 (1968), sec. 1.274-5(b)(3) and (4), Income Tax Regs.
In the Sanford case, the Court stated that the requirements imposed by section 274 "are in addition to the requirements imposed by section 162, and petitioner still has the burden of proving initially that his expenditures *287 were ordinary and necessary expenses, proximately related to his trade or business." With this in mind, we turn to the evidence and testimony petitioner offered in respect to the taxable year 1963. With the exception of the evidence with respect to a European trip, which we will deal with later, it is the same type of general testimony as was offered for 1962, namely, that he conducted his business with much travel and entertainment. There was no effort to relate the travel and entertainment to specific trips or customer entertainment. It seems clear that if the evidence for 1962 was inadequate to establish that the expenses in question were "ordinary and necessary," then, that same type of evidence does not satisfy the substantiation requirements of section 274(d). John L. Ashby, 50 T.C. 409 (1968); William F. Sanford, supra; and John Robinson, supra. One of the items of deductions included in the $23,883.67 total for 1963 was a 48-day European trip by petitioner and his wife. The item was for $3,197.10 paid to a travel agency. Petitioner testified that the trip was primarily taken for associates. The deductibility of expenditures for a wife *288 on a business trip requires a finding that her services were necessary and not just helpful. L.L. Moorman, 26 T.C. 666 (1956). Petitioner married his wife in April of 1963 and the trip in question started that same month. It is somewhat significant that petitioner did not call his wife to the stand to testify as to just how she was "active" in the business. Petitioner's testimony by itself is too general and there is not enough to establish that her services were necessary to his business. The evidence shows they spent 5 days in London and 5 days in Paris and petitioner concedes these 10 days were spent in personal matters. 73 Section 274(c)(2)(B) [2] provides there shall be no allocation between the personal and business portions of a foreign business trip if less than 25 percent of the time away from home is spent on personal matters. Petitioner argues that the 10 days spent in London and Paris were the only days spent in personal activities and the balance of the time in Germany, Belgium, Holland, and Denmark were attributable to his business. Petitioner argues there should be no allocation between personal and business portions of the trip under the above cited *289 statute because less than 25 percent of the portion of time of travel would not be attributable to business. We are inclined to agree with this portion of petitioner's argument. There *290 is no dispute about the itinerary or duration of the trip and the expense of the trip insofar as payment to the travel bureau of $3,197.10 is admitted. There was a good deal of testimony about petitioner's business connections in the European cities he visited. In fact his business in the United States was taken over by a Danish firm in 1967. We feel he succeeded in proving the business nature of the trip and that less than 25 percent was spent in nonbusiness pursuit. We do not feel the evidence establishes the business necessity for his wife to accompany him on this European trip. The evidence does not show the amount which was expended on behalf of the wife. Under the circumstances we must exercise our best judgment which is that an amount of $1,000 of the total amount paid to the travel agency should be attributed to the wife. This means $2,197.10 of the amount petitioner paid to the travel agency should be allowed as a business deduction. It also means petitioner succeeded in substantiating $1,197.10 more than $1,000 estimated additional allowance contained in respondent's determination of deficiency for 1963. We hold respondent's determination of business deductions for the year *291 1963 should be increased by $1,197.10. The stipulation of facts does not list the items that make up the 1963 total of $5,844.02 claimed to be deductible as "Traveling and Salesmen's Expenses." However, the stipulation places these expenses in the category of "Travel" and on brief petitioner states these expenses were traveling expenses for travel in this country. Respondent allowed $3,047.88 of this claimed deduction, including payments to Texaco, Standard Oil, Gulf Oil, and Cities Service. The significant fact is that petitioner introduced no evidence at all of any trips. We have only his general statement that in the conduct of his business it was necessary for him and his salesmen to travel. It is enough to say the evidence does not warrant more than was allowed by respondent. Respondent asserted an addition to tax under section 6653(a) for 1962 and 1963. This section provides that "if any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * *, there shall be added to the tax an amount equal to 5 percent of the underpayment." Petitioner kept regular books of account listing his income and expenses. The only difficulty with *292 his records was the fact that they were not detailed enough to support all of the deductions he took for travel and entertainment expenses. Petitioner had records, some of which were quite detailed, such as cancelled checks and receipts. Respondent allowed quite a few deductions taken by the petitioner, therefore, petitioner's records, for the most part, must have been adequate. The mere fact that we do not consider his records adequate to substantiate all of the deductions he took in 1962 and 1963 does not require us to conclude that there was an "underpayment" of tax that was due to petitioner's negligence or his intentional disregard of respondent's rules and regulations. John Robinson, supra. 74 We therefore hold that petitioner is not liable for the addition to tax for negligence provided in section 6653(a). There were other adjustments in the deficiency notices that were not contested. Decisions will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless other-wise noted.↩
2. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (c) Certain Foreign Travel. - (1) In General. - In the case of any individual who travels outside the United States away from home in pursuit of a trade or business or in pursuit of an activity described in section 212, no deduction shall be allowed under section 162 or section 212 for that portion of the expenses of such travel otherwise allowable under such section which, under regulations prescribed by the Secretary or his delegate, is not allocable to such trade or business or to such activity. (2) Exception. - Paragraph (1) shall not apply to the expenses of any travel outside the United States away from home if - (A) such travel does not exceed one week, or (B) the portion of the time of travel outside the United States away from home which is not attributable to the pursuit of the taxpayer's trade or business or an activity described in section 212 is less than 25 percent of the total time on such travel.↩